**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sean Bernard Runningeagle, | )  No. CV-98-1903-PHX-PGR |
| Petitioner, | )  <u>DEATH PENALTY CASE</u> |
| vs. | ) |
| Dora Schriro, et al., | )  **MEMORANDUM OF DECISION** |
| Respondents. | )  **AND ORDER** |

Sean Bernard Runningeagle (Petitioner), a state prisoner under sentence of death, petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that he is imprisoned and sentenced in violation of the United States Constitution.  Before the Court is Petitioner's Amended Petition, which raised twenty-five claims for habeas relief. (Dkt. 18.)[1]  In previous orders, this Court denied relief for all claims found procedurally barred.  (*See* Dkt. 90, 108.)  This Order addresses the merits of the remaining claims and Petitioner's requests for evidentiary development.  The Court concludes that Petitioner is not entitled to habeas relief or to evidentiary development.

---

[1]      "Dkt." refers to the documents in this Court's file.  "ROA" refers to the state court record on appeal (CR-89-0046-AP ).  "ME" refers to the minute entries of the state court.  "RT" refers to the state court reporter's transcript.  "Ariz.Sup.Ct.R." refers to Arizona Supreme Court's direct appeal record.  "ROA-PCR" refers to the state court record from Petitioner's post-conviction relief proceedings (CR-97-0173-PC).  Certified copies of the various state court proceedings were provided to this Court by the Arizona Supreme Court. (*See* Dkt. 16.)

## BACKGROUND

The following events, as set forth by the Arizona Supreme Court, resulted in Petitioner's conviction and death sentence.

In the early morning of December 6, 1987, Runningeagle, [Corey] Tilden, and their two friends Orva and Milford Antone, were driving around Phoenix. Runningeagle wanted parts for his car, so the foursome stopped at the Davis house, which had a car parked outside. Runningeagle, Tilden and Orva got out of the car, while Milford remained passed out drunk in the back seat. Runningeagle used his large hunting knife to remove two carburetors from the Davis car. Orva put them and an air scoop in the trunk of Runningeagle's car. Tilden and Runningeagle also stole a floor jack and tool box. Orva took a bicycle from the open garage.

Herbert and Jacqueline Williams, an elderly couple, lived next door to the Davises. Mr. Williams came out of his house and told the young men to leave or he would call the police. Orva returned to the car, but Runningeagle and Tilden approached Mr. Williams. Runningeagle concealed his knife by his side. Tilden carried a large, black flashlight. Runningeagle then began to tease and scare Mr. Williams with the knife. Mr. Williams retreated and told Runningeagle to put the knife away. Mrs. Williams then came out of the house and yelled at them. Tilden confronted Mrs. Williams, argued with her, and then hit her on the side of the head with the flashlight. Mr. Williams told them to leave his wife alone, and helped her back into the house. Runningeagle broke through the Williams' door with a tire iron, and he and Tilden barged in.

The noise awakened a neighbor, who heard Mrs. Williams crying and the words "bring him in" spoken by a tall, young man he saw standing in the Williams carport. The neighbor called "911," but by the time the police arrived, Mr. and Mrs. Williams were dead. Mr. Williams suffered several head injuries and five stab wounds, three of which were fatal. Mrs. Williams also suffered several head injuries, one of which fractured her skull and was possibly fatal, in addition to four stab wounds, three of which were fatal.

The police searched the Williams home. The drawer in which Mrs. Williams stored her jewelry was open and some jewelry was missing. They found an empty purse, blood drops and two bloody shoe print patterns. They discovered Runningeagle's palm print on the clothes dryer next to the bodies.

Runningeagle discussed the crimes on several occasions before his arrest. He told his girlfriend that he had been in a fight with two people and had hit them "full-force." He showed her his car trunk full of the stolen property. He showed the hood scoop and carburetors to another friend. Tilden, too, spoke about the crimes and informed Runningeagle that an account of the burglary was on the radio and that "they got there an hour after we left."

When the defendants were arrested, the police found, among other things, the Davis air scoop with Runningeagle's prints on it, two carburetors, the tool box, Mrs. Williams' wallet and college pin, a large black flashlight with Tilden's prints on it, and the Davis bicycle with Runningeagle's prints on the wheel rim. A Phoenix Police Department criminalist matched

Runningeagle's shoes with the bloody shoe prints found at the Williams house, and also found that an inked print of Tilden's shoes made a pattern similar to other shoe prints at the house.

Runningeagle, Tilden, and Orva Antone were indicted on two counts of first degree murder, and one count each of first degree burglary of a residence, second degree burglary of a residence, third degree burglary of a car, theft of property valued between $500 and $1000, and theft of property valued between $250 and $500.  Orva Antone pleaded guilty to burglary and testified for the state at the joint trial.

*State v. Runningeagle*, 176 Ariz. 59, 61-62, 859 P.2d 169, 171-72, *cert. denied*, 510 U.S. 1015 (1993).

Petitioner was found guilty on two counts of first degree murder (ROA 51, 52; ME 7/27/88) and sentenced to death.  (ROA 290, Special Verdict.)  While his direct appeal was pending he filed, *pro se*, a Petition for Post-Conviction Relief pursuant to Rule 32 of the Arizona Rules of Criminal Procedure.  (Dkt. 21, Ex. B & C; ROA 93, 95.)  The Arizona Supreme Court revested jurisdiction in the trial court to resolve the PCR.  (Ariz.Sup.Ct.R. 19.)  The trial court appointed counsel, who filed a Supplemental PCR and a Second Supplemental PCR.  (Dkt. 21, Ex. D & E; ROA 110, 111.)  The trial court summarily denied post-conviction relief.  (Dkt. 21, Ex. F.)  Petitioner moved for rehearing, which also was denied.  (*Id.*, Ex. G & H.)  Petitioner then sought review in the Arizona Supreme Court.  (Ariz.Sup.Ct.R. 30; ROA-PCR 356.)  The Arizona Supreme Court granted review and consolidated Petitioner's PCR claims with his direct appeal claims. (Ariz.Sup.Ct.R. 31.) The Arizona Supreme Court affirmed Petitioner's convictions and sentences and denied post-conviction relief.  *Runningeagle*, 176 Ariz. at 59, 859 P.2d at 169.  Petitioner moved for reconsideration (Ariz.Sup.Ct.R. 45), which was denied.

Petitioner, *pro se*, moved the Arizona Supreme Court to discharge his counsel and proceed *pro se*.  (Ariz.Sup.Ct.R. 53, 54, 57.)  The supreme court granted counsel's motion to withdraw and granted Petitioner's motion to proceed *pro se*.  (Ariz.Sup.Ct.R. 60.) A *pro se* writ of certiorari was filed and denied.  *Runningeagle v. Arizona*, 510 U.S. 1015 (1993).

Thereafter, the Arizona Supreme Court issued its mandate and filed in the trial court a Notice of PCR on Petitioner's behalf.  (Ariz.Sup.Ct.R. 78, 79.)  The trial court allowed

Petitioner to continue to proceed *pro se*.  (ROA-PCR 378.)  Petitioner did not comply with the deadline for filing a second PCR petition, and the trial court summarily dismissed the post-conviction proceedings. (ROA-PCR 404.)

Next, Petitioner filed a *pro se* petition for writ of habeas corpus in this Court, No. CV-94-972-PHX-PGR.  The Court appointed counsel, who filed an amended petition.  The Court dismissed the amended petition without prejudice, finding that it presented both exhausted and unexhausted claims and concluding that it was not clear whether state post-conviction remedies remained available.

Meanwhile, Petitioner initiated his third PCR proceeding in state court.  His third PCR petition ultimately raised forty claims.  (ROA-PCR 417, 447B.)  The PCR court summarily dismissed the petition.  (Dkt. 21, Ex. Y.)  Petitioner moved for rehearing, which was denied. (*Id.*, Ex. Z, AA.)  Petitioner sought review in the Arizona Supreme Court, which also was denied.  (*Id.*, Ex. BB.)

Petitioner commenced the instant action by moving for appointment of counsel.  (Dkt. 1.)  The Court appointed counsel and Petitioner filed an Amended Petition for Writ of Habeas Corpus.  (Dkt. 18.)  Respondents filed an Answer limited to the procedural status of Petitioner's claims.

While the procedural status of Petitioner's claims was under advisement, the Ninth Circuit Court of Appeals issued *Smith v. Stewart*, 241 F.3d 1191 (9th Cir. 2001), calling into question Arizona's doctrine of procedural default.  This Court deferred its ruling on the procedural status of Petitioner's claims pending further review of *Smith*.  (Dkt. 66.)  The United States Supreme Court reversed.  *Stewart v. Smith*, 536 U.S. 856 (2002) (per curiam). Contemporaneously, the Supreme Court decided *Ring v. Arizona*, 536 U.S. 584 (2002), which found Arizona's death penalty sentencing scheme unconstitutional because judges rather than juries determined the factual existence of the statutory aggravating circumstances that rendered a defendant eligible for the death penalty.  In response, Petitioner moved this Court for a stay of these habeas proceedings so that he could return to state court and pursue post-conviction relief based upon *Ring*. (Dkt. 74.)  The Court granted the stay with respect

1  to Petitioner's sentencing claims but denied Petitioner's request to stay his conviction-related

2  claims.  (Dkt. 79.)

3        Subsequently, in an interim Order, the Court ruled on the procedural status of

4  Petitioner's conviction-related claims.  (Dkt. 90.)  In 2004, the United States Supreme Court

5  held that *Ring* does not apply retroactively.  *See Schriro v. Summerlin*, 542 U.S. 348 (2004).

6  Thereafter this Court vacated its stay of the sentencing-related claims, issued an Order

7  resolving their procedural status, and ordered merits briefing.  (Dkts. 102, 108.)  Petitioner

8  submitted briefing and also filed requests for evidentiary development.   (Dkt. 115.)

9  Respondents filed a response, and Petitioner filed a reply.  (Dkts. 119, 124.)

10                **LEGAL STANDARD FOR FEDERAL HABEAS RELIEF**

11        Petitioner filed his amended petition after the effective date of the Antiterrorism and

12  Effective Death Penalty Act ("AEDPA").   Therefore, the provisions of the AEDPA govern

13  consideration of Petitioner's claims.   For properly preserved claims "adjudicated on the

14  merits" by a state court, the AEDPA established a more rigorous standard for habeas relief.

15  *See Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003) (*Miller-El I*).   As the Supreme Court has

16  explained, the AEDPA's "'highly deferential standard for evaluating state-court rulings' . .

17  . demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*,

18  537 U.S. 19, 24 (2002) (per curiam) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997).

19        The phrase "adjudicated on the merits" refers to a decision resolving a party's claim

20  which is based on the substance of the claim rather than on a procedural or other non-

21  substantive ground.  *Lambert v. Blodgett*, 393 F.3d 943, 969 (9th Cir. 2004).  The relevant

22  state court decision is the last reasoned state decision regarding a claim.  *Barker v. Fleming*,

23  423 F.3d 1085, 1091 (9th Cir. 2005) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803-804

24  (1991)); *Insyxiengmay v. Morgan*, 403 F.3d 657, 664 (9th Cir. 2005).

25        Under the AEDPA, a petitioner is not entitled to habeas relief on any claim

26  adjudicated on the merits by the state court unless that adjudication:

27          (1) resulted in a decision that was contrary to, or involved an unreasonable
            application of, clearly established Federal law, as determined by the Supreme
28          Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"The threshold question under AEDPA is whether [petitioner] seeks to apply a rule of law that was clearly established at the time his state-court conviction became final." *Williams v. Taylor*, 529 U.S. 362, 390 (2000). Therefore, to assess a claim under subsection (d)(1), the Court must first identify the "clearly established Federal law," if any, that governs the sufficiency of the claims on habeas review. "Clearly established" federal law consists of the holdings of the Supreme Court at the time the petitioner's state court conviction became final. *Williams*, 529 U.S. at 365; *see Carey v. Musladin*, 127 S. Ct. 649 (2006); *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003). Habeas relief cannot be granted if the Supreme Court has not "broken sufficient legal ground" on a constitutional principle advanced by a petitioner, even if lower federal courts have decided the issue. *Williams*, 529 U.S. at 381; *see Casey v. Moore*, 386 F.3d 896, 907 (9th Cir. 2004). Nevertheless, while only Supreme Court authority is binding, circuit court precedent may be "persuasive" in determining what law is clearly established and whether a state court applied that law unreasonably. *Clark*, 331 F.3d at 1069.

The Supreme Court has provided guidance in applying each prong of § 2254(d)(1). The Court has explained that a state court decision is "contrary to" the Supreme Court's clearly established precedents if the decision applies a rule that contradicts the governing law set forth in those precedents, thereby reaching a conclusion opposite to that reached by the Supreme Court on a matter of law, or if it confronts a set of facts that is materially indistinguishable from a decision of the Supreme Court but reaches a different result. *Williams*, 529 U.S. at 405-06; *see Early v. Packer,* 537 U.S. 3, 8 (2002) (per curiam). In characterizing the claims subject to analysis under the "contrary to" prong, the Court has observed that "a run-of-the-mill state-court decision applying the correct legal rule to the facts of the prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." *Williams*, 529 U.S. at 406; *see Lambert v. Blodgett*, 393 F.3d 943, 974 (9th Cir.

1    2004).

2          Under the "unreasonable application" prong of § 2254(d)(1), a federal habeas court

3    may grant relief where a state court "identifies the correct governing legal rule from [the

4    Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case" or

5    "unreasonably extends a legal principle from [Supreme Court] precedent to a new context

6    where it should not apply or unreasonably refuses to extend that principle to a new context

7    where it should apply." *Williams*, 529 U.S. at 407.  In order for a federal court to find a state

8    court's application of Supreme Court precedent "unreasonable" under § 2254(d)(1), the

9    petitioner must show that the state court's decision was not merely incorrect or erroneous,

10   but "objectively unreasonable."  *Id.* at 409; *Visciotti*, 537 U.S. at 25.

11         Under the standard set forth in § 2254(d)(2), habeas relief is available only if the state

12   court decision was based upon an unreasonable determination of the facts.  *Miller-El v.*

13   *Dretke*, 545 U.S. 231, 240 (2005) (*Miller-El II*).  A state court decision "based on a factual

14   determination will not be overturned on factual grounds unless objectively unreasonable in

15   light of the evidence presented in the state-court proceeding." *Miller-El I*, 537 U.S. at 340.

16   In considering a challenge under 2254(d)(2), state court factual determinations are presumed

17   to be correct, and a petitioner bears the "burden of rebutting this presumption by clear and

18   convincing evidence."  28 U.S.C. § 2254(e)(1); *Miller-El II*, 545 U.S. at 240.

19         As the Ninth Circuit has noted, application of the foregoing standards presents

20   difficulties when the state court decided the merits of a claim without providing its rationale.

21   *See Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003); *Pirtle v. Morgan*, 313 F.3d 1160,

22   1167 (9th Cir. 2002); *Delgado v. Lewis*, 223 F.3d 976, 981-82 (9th Cir. 2000).  In those

23   circumstances, a federal court independently reviews the record to assess whether the state

24   court decision was objectively unreasonable under controlling federal law.  *Himes*, 336 F.3d

25   at 853; *Pirtle*, 313 F.3d at 1167.  Although the record is reviewed independently, a federal

26   court nevertheless defers to the state court's ultimate decision.  *Pirtle*, 313 F.3d at 1167

27   (citing *Delgado*, 223 F.3d at 981-82); *see also Himes*, 336 F.3d at 853.  Only when a state

28   court did not decide the merits of a properly raised claim will the claim be reviewed *de novo*,

1    because in that circumstance "there is no state court decision on [the] issue to which to

2    accord deference." *Pirtle*, 313 F.3d at 1167; *see also, Menendez v. Terhune*, 422 F.3d 1012,

3    1025-26 (9th Cir. 2005); *Nulph v. Cook*, 333 F.3d 1052, 1056-57 (9th Cir. 2003).

4                                    **MERITS DISCUSSION**

5              **Ineffective Assistance of Counsel Claims**

6              In Claims 1(D), 19, and 1(G), Petitioner alleges ineffective assistance of counsel at

7    trial and sentencing.  These claims are governed by *Strickland v. Washington*, 466 U.S. 668

8    (1984).  *See Wilson v. Henry*, 185 F.3d 986, 988 (9th Cir. 1999).  To prevail on a claim of

9    ineffective assistance of counsel, a petitioner must show that counsel's performance was

10   deficient and that the deficient performance prejudiced his defense.  *Strickland*, 466 U.S. at

11   687.  The performance inquiry asks whether counsel's assistance was reasonable considering

12   all the circumstances.  *Id.* at 688-89.  "[A] court must indulge a strong presumption that

13   counsel's conduct falls within the wide range of reasonable professional assistance; that is,

14   the defendant must overcome the presumption that, under the circumstances, the challenged

15   action 'might be considered sound trial strategy.'"  *Id.* at 689.

16             A petitioner must affirmatively prove prejudice by "show[ing] that there is a

17   reasonable probability that, but for counsel's unprofessional errors, the result of the

18   proceeding would have been different." *Id.* at 694.  "A reasonable probability is a probability

19   sufficient to undermine confidence in the outcome." *Id.*  "The assessment of prejudice

20   should proceed on the assumption that the decision-maker is reasonably, conscientiously, and

21   impartially applying the standards that govern the decision." *Id.* at 695.  If the state's case

22   is weak, there is a greater likelihood of a reasonable probability that the outcome of the trial

23   would have been different. *Johnson v. Baldwin*, 114 F.3d 835, 839-40 (9th Cir. 1997).

24             A court need not address both components of the inquiry, or follow any particular

25   order in assessing deficiency and prejudice.  *Strickland*, 466 U.S. at 697.  If it is easier to

26   dispose of an ineffectiveness claim on the ground of lack of prejudice, without evaluating

27   counsel's performance, then that course should be taken.  *Id.*

28             Under the AEDPA, to obtain habeas relief on an ineffective assistance of counsel

1    claim, it is not enough for a petitioner to convince a federal habeas court that, in its

2    independent judgment, the state court applied either prong of *Strickland* incorrectly.  Rather,

3    the petitioner must show that the state court's decision was contrary to or involved an

4    objectively unreasonable application of *Strickland*.  *See Bell v. Cone*, 535 U.S. 697, 699

5    (2002).

6    **Claim 1(D)**

7        Petitioner argues that his constitutional right to effective assistance of counsel was

8    violated when trial counsel did not join co-defendant Tilden's motion to sever their trials.

9    (Dkt. 103 at 9-20.)  The Arizona Supreme Court rejected this claim: "Because severance was

10   not required, counsel's failure to take a position on the motion to sever was not deficient."

11   *Runningeagle*, 176 Ariz. at 63, 859 P.2d at 173.  This decision does not represent an

12   unreasonable application of *Strickland*.

13       Factual Background

14       During pre-trial proceedings, Tilden moved to sever his trial from Petitioner's.  (ROA

15   23 (Tilden Record)).  Counsel for Petitioner indicated that he took no position on the motion.

16   (Dkt. 131, RT 5/26/88 at 11-12.)  At oral argument on the motion, Tilden contended that his

17   defense – that he was not present at the crime scene –  would be antagonistic to Petitioner's

18   defense because it would emphasize the evidence against Petitioner and show the

19   comparative lack of evidence against Tilden.  (*Id.* at 16.)  Tilden's defense would therefore

20   lead the jury to disbelieve Petitioner's insufficient-evidence defense.  (*Id.* at 10.)  Tilden also

21   argued that there would be a "spill over" or "rub off" effect against him due to the greater

22   amount of evidence against Petitioner.  (*Id.* at 9-12.)  Finally, Tilden argued that even with

23   cautionary instructions the jury would have a difficult time segregating the evidence against

24   Petitioner and the evidence against him.  (*Id.*)

25       The trial court denied the motion to sever, concluding that the spillover effect against

26   Tilden was not disproportionate and that the defenses were not so antagonistic as to be

27   mutually exclusive.  (ME 6/6/88.)

28       During trial, Tilden's defense emphasized the evidence against Petitioner and the lack

1  of evidence against him.  Prior to the cross-examination of Detective Martinsen – the

2  homicide detective who supervised the processing of evidence – Tilden renewed his motion

3  to sever.  (RT 7/7/88 at 4.)  He advised the court that during his cross-examination of

4  Martinsen, he planned to go back through all the evidence from the murder scene and the

5  evidence seized at the apartment in order to emphasize the evidence against Petitioner and

6  the lack of evidence against him.  Tilden renewed his argument that the defenses were so

7  antagonistic to be mutually exclusive.  (*Id.* at 4-6.)  Counsel for Petitioner again took no

8  position on the motion.  (*Id.* at 6.)  The trial court denied the motion, repeating that the

9  defenses were not so antagonistic as to be mutually exclusive.  (*Id.* at 8.)

10       On direct review of the trial court's denial of severance, the Arizona Supreme Court

11  held that Tilden was not prejudiced because even though the evidence against Petitioner was

12  stronger than the evidence against Tilden, there remained substantial evidence of Tilden's

13  guilt.  *See Runningeagle*, 176 Ariz at 68, 859 P.2d at 178.  Citing *Zafiro v. United States*, 506

14  U.S. 534 (1993), the court held that any risk of prejudice to Tilden was cured by jury

15  instructions which adequately advised the jury that they were only to consider each

16  defendant's conduct based on the evidence that applied to that defendant as if he were being

17  tried alone.[2]  *Id.*  The court further ruled that Tilden's alibi defense was not antagonistic to

18  Petitioner's insufficiency of evidence defense.  *Id.* at 68-69, 859 P.2d at 178-79.

19  Consequently, the supreme court concluded that since the trial court did not err in denying

20  Tilden's motion to sever, Petitioner's counsel did not render deficient performance by failing

21  to join the severance motion.  *Id.* at 63, 859 P.2d at 173.

22       <u>Discussion</u>

23

24       [2]     In *Zafiro*, the Supreme Court held that severance is generally required when
25  there is a "serious risk that a joint trial would compromise a specific trial right of one of the
   defendants or prevent the jury from making a reliable judgment about guilt or innocence."
26  506 U.S. at 539.  The Court considered the defendants' contentions that their defenses were
   mutually antagonistic requiring severance.  *Id.* at 540.  The Court held that even though the
27  defendants accused one other of being the guilty party, their defenses were not mutually
28  antagonistic; rather, the jury reasonably convicted all four defendants.  *Id.*

1    Petitioner maintains that even though the Arizona Supreme Court correctly identified

2  *Zafiro* and *Strickland* as controlling law, the court unreasonably applied those cases to the

3  facts of his case in violation of 28 U.S.C. § 2254(d)(1).  (Dkt. 103 at 19.)  This Court

4  disagrees.  Petitioner has made no showing that, had counsel joined Tilden's motion, the trial

5  court would have severed the proceedings; nor has he demonstrated that he was prejudiced

6  by a joint trial.  *See Rastafari v. Anderson*, 278 F.3d 673, 689-90 (7th Cir. 2002) (habeas

7  petitioner not entitled to relief under *Strickland* because, even if severance had been

8  appropriate under state law, there was no reasonable probability of a different outcome if

9  petitioner had been tried separately).

10    Generally, if co-defendants have mutually antagonistic defenses, severance may be

11  necessary.  Mutually antagonistic defenses are those which force the jury to disbelieve the

12  core of one defense in order to believe the core of the other defense. *See United States v.*

13  *Rashkovski*, 301 F.3d 1133, 1137-38 (9th Cir. 2002).  Thus, a jury's acceptance of one

14  party's defense precludes the acquittal of the other defendant.  *Id.* at 1138.  However,

15  antagonism between defenses or the desire of one defendant to exculpate himself by

16  inculpating a co-defendant is insufficient to require severance.  *See United States v.*

17  *Throckmorton*, 87 F.3d 1069, 1072 (9th Cir. 1996).  Similarly, a defendant is not entitled to

18  severance merely because the evidence against a co-defendant is more damaging than the

19  evidence against him.  *See United States v. Martin*, 866 F.2d 972, 979 (8th Cir. 1989).

20    Based upon *Zafiro*, the Arizona Supreme Court concluded that Petitioner and Tilden

21  did not have mutually exclusive defenses:  "Tilden claims that he was not guilty because he

22  was at home on the morning of the murder.  Runningeagle argued that the state's evidence

23  was insufficient to convict him.  The defenses are unrelated.  The jury could have believed

24  both, one, the other or neither.  The [trial] court did not err in denying the motion to sever."

25  *Runningeagle*, 176 Ariz. at 69, 859 P.2d at 179.  This Court agrees.  Because the jury could

26  have accepted either defense without convicting the other defendant, the defenses in this case

27  were not mutually antagonistic.

28    Petitioner further contends that his right to present a defense was compromised

because Tilden acted like a second prosecutor by reiterating all of the evidence already marshaled against Petitioner by the State.  (Dkt. 103 at 17.)   Prejudice exists if a joint trial resulted in compromising a specific trial right of one of the defendants.  *Zafiro*, 506 U.S. at 539.  However, Petitioner's right to present a defense was not compromised because he had the opportunity to challenge the evidence submitted at trial in order to support his defense of insufficient evidence.

It was not objectively unreasonable for Petitioner's counsel not to join Tilden's severance motion and Petitioner suffered no prejudice.  The Arizona Supreme Court did not unreasonably apply *Strickland* when it denied this ineffective assistance claim.  Therefore, Claim 1(D) is without merit.

**Claim 19**

Petitioner contends that counsel's performance was deficient because he failed to move to sever Petitioner's sentencing proceedings from co-defendant Tilden's.  (Dkt. 115 at 31-40.)   Petitioner argues that the joint sentencing proceedings allowed Tilden to emphasize Petitioner's guilt and his own lack of culpability; as a result, he was sentenced to death while Tilden received a life sentence.  (*Id.*)  Because the state court did not resolve the merits of this claim, this Court's review is *de novo*.  *See Pirtle*, 313 F.3d at 1167.


Legal Standard

The right to effective assistance of counsel applies not just to the guilt phase, but "with equal force at the penalty phase of a bifurcated capital trial."  *Silva v. Woodford*, 279 F.3d 825, 836 (9th Cir. 2002) (quoting *Clabourne v. Lewis*, 64 F.3d 1373, 1378 (9th Cir. 1995)).  At the penalty phase, because the sentence of death is different in both its severity and finality, the Eighth Amendment requires that each defendant receive an individualized sentencing decision.  *See Lockett v. Ohio*, 438 U.S. 586, 604 (1976).  However, an individualized sentencing decision does not mean that a defendant is entitled to an individual penalty phase hearing; it requires only that the sentencing decision is based upon the character and record of the defendant and the circumstances of the particular offense.  *See,*

1  *e.g.*, *Clemons v. Mississippi*, 494 U.S. 738, 748 (1990).  At the penalty phase, individualized

2  sentencing requires that the State not limit the discretion of the sentencer, but allow the

3  sentencer to consider any relevant information offered in mitigation by the defendant.  *Id.*

4            Factual Background

5            In order to consider Petitioner's ineffectiveness argument, the Court reviews the entire

6  sentencing proceeding, both for Tilden and for Petitioner.  At sentencing, Tilden presented

7  the testimony of psychologist Donald Tatro, who opined that Tilden suffered from a

8  personality disorder but not an antisocial personality disorder.  (RT 11/18/88.)  Dr. Tatro

9  testified that Tilden's personality disorder was treatable and that he was capable of

10 rehabilitation.  (*Id.*)  Dr. Tatro explained that the rehabilitation prognosis is more difficult for

11 those manifesting an antisocial personality disorder, because they do not have the same level

12 of conscience or remorse.  (*Id.*)  Following Dr. Tatro's testimony, Tilden presented a number

13 of family and friends who testified about his difficult family background, his efforts to

14 complete his education, and their opinion that the circumstances of the crime were out of

15 character for him.  (RT 11/18/88, 12/9/88.)  During closing argument, Tilden argued that his

16 age – eighteen – was a statutory mitigating factor, and that other mitigating circumstances,

17 including his difficult family background, personality disorder, love of family, and lingering

18 doubt about how much Tilden participated in the murders, called for a lenient sentence.  (RT

19 1/13/89.)  During closing argument, Tilden focused on his own mitigation; he did not attack

20 Petitioner by arguing that he had the more prominent role in the crimes.  (*Id.*)

21           Because Tilden and Petitioner grew up together, counsel for Petitioner took the

22 opportunity to question Tilden's witnesses in order to elicit mitigating information

23 concerning his client.  (RT 11/18/88, 12/9/88.)  Counsel also brought in family and friends

24 who testified about Petitioner's difficult family background and explained that his character

25 was not consistent with the facts of the crime.

26           Following the presentation of aggravation and mitigation evidence, the trial court

27 scheduled a sentencing hearing.  (RT 1/13/89.)  At this proceeding, the trial court specifically

28 noted its constitutional duty to provide for individualized sentencing:  "The Court is very

1 mindful of the constitutional requirement to individualize and to individually determine all

2 sentencings.  This is particularly true in a capital case.  And as required, that I consider all

3 of the relevant mitigating factors.  I will set forth, as I have indicated, my findings separately

4 as to each defendant, although some will be the same, and I will indicate that and incorporate

5 that by reference to those findings." (RT 2/3/89 at 18.)

6      Discussion

7      Petitioner argues that counsel was ineffective for failing to move for a separate

8 sentencing proceeding to prevent Tilden from continuing to act like a second prosecutor by

9 emphasizing Petitioner's guilt.  (Dkt. 115 at 31-40.)  However, Petitioner fails to cite any

10 specific instances of Tilden acting as a second prosecutor during the sentencing proceedings,

11 and, contrary to Petitioner's allegations, the record establishes that Tilden's strategy at

12 sentencing was to present his own mitigation evidence.  (RT 11/18/88, 12/9/88, 1/13/89.)

13 Specifically, Tilden focused on mitigating evidence regarding his mental health, his age, and

14 his difficult family background.  (*Id.*)   Because Tilden's counsel did not act as a second

15 prosecutor at sentencing, Petitioner's counsel was not ineffective for failing to move for

16 severance.

17      Even if Tilden had attempted to shift blame toward Petitioner at sentencing, Petitioner

18 would not be entitled to relief on this claim.  At sentencing, the trial judge was the factfinder

19 and determined the existence of aggravating and mitigating circumstances.  Trial judges are

20 presumed to know the law and to apply it making their decisions.  *See Walton v. Arizona*, 497

21 U.S. 639, 653 (1990).  This includes filtering out irrelevant evidence presented at sentencing.

22 Consequently, even if Tilden had attempted to emphasize the evidence against Petitioner and

23 the relative lack of inculpatory evidence against him, the trial judge, acting as sentencer,

24 would not consider any irrelevant evidence in determining Petitioner's appropriate sentence.

25 *See id.*

26      Furthermore, the trial court specifically discussed its constitutional obligation to

27 implement individualized sentencing.  (RT 2/3/89 at 18.)  The court separately considered

28 the evidence for each defendant, discussing the specific aggravating and mitigating evidence

1    presented.  (RT 2/3/89.)  There is no evidence that the joint sentencing proceeding resulted

2    in Petitioner being unable to present any evidence that he desired to present.  Rather, the

3    evidence showed that Petitioner benefitted from the joint proceedings because he was able

4    to use Tilden's witnesses to present his own mitigation evidence.  Therefore, Petitioner was

5    not prejudiced by counsel's failure to move for severed sentencing hearings.  *See Rastafari*,

6    278 F.3d at 690-91 (no evidence that the jury would have balanced factors differently in

7    separate sentencing proceedings).  Moreover, there is no evidence suggesting that the court

8    would have granted a motion to sever the sentencing proceedings.

9        Because counsel's decision not to move for severance at sentencing was neither

10    deficient nor prejudicial, Claim 19 is without merit.

11    **Claim 1(G)**

12        Petitioner contends that he received ineffective assistance at trial because counsel

13    failed to investigate and present a defense asserting that Petitioner did not have the requisite

14    mental state at the time of the crimes.  (Dkt. 103 at 20-23.)  This Court's review is *de novo*.

15    *See Pirtle*, 313 F.3d at 1167(concluding that if a post-conviction court mistakenly determined

16    that a claim had been presented on direct appeal and summarily dismissed it in post-

17    conviction proceedings based on a rule prohibiting relitigation, habeas court's review is *de*

18    *novo*).  Claim 1-G's procedural posture is similar to that of *Pirtle*; review is *de novo*.

19        In Arizona, expert testimony regarding a defendant's mental disorder short of insanity

20    is not allowed as an affirmative defense or to negate the *mens rea* element of a crime.  *See*

21    *State v. Mott*, 187 Ariz. 536, 541, 931 P.2d 1046, 1051 (1997); *see also Clark v. Arizona*, 126

22    S. Ct. 2709 (2006) (upholding the rule established in *State v. Mott*).  "Courts have 'referred

23    to the use of expert psychiatric evidence to negate mens rea as a diminished capacity or

24    diminished responsibility defense.'" *Mott*, 187 Ariz. at 540, 931 P.2d at 1050.  The Arizona

25    legislature has declined to adopt the defense of diminished capacity.  *Id*.

26        Here, Petitioner faults counsel for failing to investigate and present evidence of his

27    mental health at trial.  However, short of asserting that Petitioner was insane at the time of

28    the crimes, such a defense could not have been presented in Arizona.

1   The state of Petitioner's mental health and the facts of the crime did not support a

2   defense of insanity and therefore counsel did not render deficient performance in failing to

3   investigate and present such a defense.  At the time of the crime, Petitioner was attending

4   Scottsdale Community College, taking classes in criminal justice.  (RT 11/18/88 at 87-90.)

5   Results of psychological testing showed that Petitioner's intelligence quotient was above

6   average.  (ROA 83-A.)  The facts of the crime are likewise inconsistent with an insanity

7   defense.  *Runningeagle*, 176 Ariz. at 61-62, 859 P.2d at 171-72.  Petitioner, who was having

8   carburetor problems with his vehicle, was driving around Phoenix late at night trying to steal

9   parts for his car.  *Id.*  Just prior to the murders, he had used his hunting knife to remove two

10   carburetors and other parts from a parked vehicle and placed these parts into his car.  *Id.*

11   When the commotion drew the victims' attention, Petitioner taunted the elderly couple with

12   his knife.  *Id.*  When they retreated into their home, he broke into the house using a tire iron,

13   stole some of their belongings, and then murdered them.  *Id.*  In summary, because there was

14   no indication that Petitioner was insane at the time of the crimes, defense counsel did not

15   render deficient performance in not presenting such a defense at trial.

16   Petitioner also argues that trial counsel should have further investigated and presented

17   evidence of intoxication at the time of the crimes as a defense at trial.  (Dkt. 103 at 20-23.)

18   The Court disagrees that this aspect of counsel's performance constituted ineffective

19   assistance.

20   At the time of Petitioner's trial, A.R.S. § 13-503 provided that the jury may consider

21   a defendant's voluntary intoxication only when the mental state of "intentionally or with the

22   intent to is a necessary element" of the offense.  *See State v. Ramos*, 133 Ariz. 4, 6, 648 P.2d

23   119, 121 (1982) (evidence of intoxication allowed to negate the mental state of

24   "intentionally," but not the mental state of "knowingly").  Petitioner was charged with first

25   degree murder; the mental state was alleged alternatively as "intentionally or knowingly."

26   (RT 7/27/88 at 10.)  Thus, intent was not a necessary element of the first degree murder

27   charges, and the jury would not have been permitted to consider Petitioner's intoxication as

28   a defense.  *See State v. Schurz*, 176 Ariz. 46, 54-55, 859 P.2d 156, 164-165 (1993) (intent is

1   not a necessary element of first degree murder where the mental state is alleged alternatively

2   as "intentionally or knowingly").  Because intoxication was not a viable defense, counsel's

3   performance was not ineffective and Petitioner is not entitled to relief on Claim 1(G).

4       **Claim 2**

5       Petitioner contends that the prosecutor engaged in misconduct by suppressing

6   evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).  (Dkts. 103 at 23-27, 115

7   at 6-14.)  Petitioner alleges that the prosecution improperly withheld information it had

8   obtained from Manuel Melendez, a jailhouse cell-mate of co-defendant Corey Tilden.  (*Id.*)

9   Because the prosecution interviewed Melendez, Petitioner contends they must have obtained

10  material information that was either exculpatory or could have been used as impeachment

11  in their cross-examination of Orva Antone at trial.  (*Id.*)

12      The state court did not actually resolve the merits of this claim.  Therefore, this

13  Court's review is *de novo*.  *Pirtle*, 313 F.3d at 1167.

14      Legal Standard

15      *Brady* requires that the prosecution disclose evidence that is both favorable to the

16  accused and material either to guilt or to punishment.  *United States v. Bagley*, 473 U.S. 667,

17  674 (1985).  Impeachment evidence as well as exculpatory evidence is "favorable" and falls

18  within the *Brady* rule.  *Id.* at 676.  Evidence is "material only if there is a reasonable

19  probability that, had the evidence been disclosed to the defense, the result of the proceeding

20  would have been different.  A 'reasonable probability' is a probability sufficient to

21  undermine confidence in the outcome."  *Id.* at 682.  In *Kyles v. Whitley*, 514 U.S. 419, 435

22  (1995), the Supreme Court further explained that materiality is evaluated by determining

23  whether the favorable evidence could reasonably be taken to put the whole case in such a

24  different light as to undermine confidence in the outcome.  *See also United States v.*

25  *Jernigan*, 492 F.3d 1050, 1054 (9th Cir. 2007) (en banc) ("judges must undertake a careful,

26  balanced evaluation of the nature and strength of both the evidence the defense was

27  prevented from presenting and the evidence each side presented at trial") (further citation

28  omitted).  However, the mere possibility that an item of undisclosed information might have

1   helped the defense or might have affected the outcome of the trial or sentence does not

2   establish materiality in the constitutional sense. *See United State v. Agurs*, 427 U.S. 97, 109-

3   110 (1976).

4          Where the defendant is aware of the essential facts enabling him to take advantage of

5   any potential exculpatory or impeaching evidence, the Government does not commit a *Brady*

6   violation by failing to provide the evidence to the defendant. *See Raley v. Ylst*, 470 F.3d 792,

7   804 (9th Cir. 2006). Moreover, "[t]here is no constitutional requirement that the prosecution

8   make a complete and detailed accounting to the defense of all police investigatory work on

9   a case." *Agurs*, 427 U.S. at 109 (further citation omitted); *see also Pennsylvania v. Ritchie*,

10  480 U.S. 39, 59 (1987) (defendant's right to discover exculpatory or impeachment evidence

11  does not include the unsupervised authority to search through the government's files); *United*

12  *States v. Michaels*, 796 F.2d 1112, 1116 (9th Cir. 1986) (same).

13          <u>Factual Background</u>

14          Petitioner and co-defendants Orva Antone and Corey Tilden were all arrested on

15  December 19, 1987. (Dkt. 21, Ex. X at 6-7.) Tom Foster was appointed to represent

16  Petitioner, Roland Steinle and Tom Puklin of the Maricopa County Public Defenders Office

17  were appointed to represent Corey Tilden, and Richard Gierloff was appointed to represent

18  Orva Antone. (*Id.*) Subsequently, Gloria Castillo was appointed as Petitioner's investigator.

19  (*Id.*) On March 7, 1988, Tom Foster was withdrawn as Petitioner's attorney and Baltazar

20  Iniguez was appointed to replace him. (*Id.*) During pre-trial proceedings, Petitioner's

21  counsel filed a motion for discovery requesting "all material or information which tends to

22  mitigate or negate the defendant's guilt as to the offense charged, or which would tend to

23  reduce his/her punishment therefore . . . ." (ROA 30.)

24          During Tilden's pre-trial incarceration, he was housed in a cell with Manuel

25  Melendez. (Dkt. 48, Ex. A at 8; Dkt. 21, Ex. X at 7.) Melendez was represented by Randall

26  Reece, of the Maricopa County Public Defender's Office, and by an outside attorney,

27  Kenneth Ray. Melendez informed Reece that Tilden had confided with him about the

28  Williams homicides. (Dkt. 48, Ex. A at 7-10.) Reece, without learning any specific

information, contacted the prosecution, who interviewed Melendez on more than one occasion. (*Id.* at 7-10, 85-88.)  In March 1988, Orva Antone entered into a plea agreement which provided that he would testify about the events of December 6, 1987. (ROA-PCR 73.)

On April 20, 1988, citing a potential conflict of interest, Tilden' counsel filed a motion to determine counsel and notified Petitioner's counsel. (Dkt. 48, Ex. B.)  The motion informed the trial court that the prosecution had been investigating whether Melendez obtained information from Tilden regarding the Williams homicides. (*Id.*)  The motion further advised that the trial judge assigned to Melendez's criminal case, Judge Michael Ryan, was aware of the potential conflict in the Maricopa County Public Defender's Office and had ordered Ray to assume all further responsibilities in representing Melendez. (*Id.*)  Finally, the motion indicated that the prosecution had advised Tilden that it did not intend to call Melendez as a witness at trial. (*Id.*)  The trial judge ruled that there was no conflict of interest necessitating withdrawal by the public defenders representing Tilden because the prosecution had determined not to call Melendez as a witness. (ME 5/4/88.)  Subsequently, Melendez entered into a plea agreement on his own criminal charges. (Dkt. 48, Ex. A at 4.)

On July 29, 1988, shortly after Petitioner's and Tilden's conviction, Judge Ryan convened a hearing pursuant to Melendez's motion to withdraw from his plea agreement. (Dkt. 48, Ex. A.)  Melendez testified that the prosecution had visited with him on three occasions and he had provided them with the information he received from Tilden. (*Id.* at 6-10.)  Melendez further testified that after Antone entered into his plea agreement, he was informed that the prosecution decided not to call him as a witness. (*Id.* at 9.)

Despite receiving a copy of the motion to determine counsel from Tilden, Petitioner never interviewed or obtained information from Melendez regarding his conversations with Tilden.  Petitioner does not know what Tilden confided to Melendez and Petitioner advises the Court that Melendez is now deceased. (Dkt. 103 at 24.)

<u>Discussion</u>

The record does not contain any alleged statements that Tilden made to Melendez. There is a hearing transcript of Melendez testifying that he obtained information from Tilden

and that he provided this information to the prosecution.  (Dkt. 48, Ex. A at 7.)  Based on this record, Respondents contend that Petitioner's prosecutorial misconduct claim is meritless because the claim consists solely of speculation that Tilden provided Melendez with favorable and material information subject to disclosure under *Brady*.  (Dkt. 98 at 20-25.)  Respondents contend that all Petitioner can argue is his own inferences and speculation about what may have been said.  (Dkt. 120 at 11-19.)  Citing *Wood v. Bartholomew*, 516 U.S. 1 (1995), Respondents argue that inferences and speculation about comments Tilden may have made to the prosecution are insufficient to establish a *Brady* violation.  (*Id.*)  The Court agrees.

In *Wood v. Bartholomew*, the petitioner contended that a *Brady* violation could be found based upon suppressed polygraph results of witnesses testifying at trial even though such polygraph evidence was inadmissible under state law.  516 U.S. at 5-6.  Petitioner asserted that if the polygraph evidence had been disclosed, it may have led to the discovery of admissible exculpatory or impeachment evidence that could have been used in the cross-examination of those witnesses at trial.  *Id.*  The Supreme Court rejected this contention, holding that the polygraph information was not *Brady* evidence because it was not admissible and therefore could not have had any effect upon the outcome at trial.  *Id.* at 6.  Further, the Court rejected the contention that the polygraph evidence may have led to the discovery of admissible evidence.  *Id.*  The Court held that a *Brady* claim founded upon mere speculation is without merit.  *Id.* at 6.

Like *Bartholomew*, Petitioner has not set forth any admissible *Brady* evidence that was suppressed by the prosecution.  Without identifying and producing such evidence, so that it can be evaluated in the context of the prosecution's *Brady* obligations, Petitioner cannot meet his burden of showing that the outcome of his trial or sentencing would have been affected.  Petitioner cannot base his *Brady* claim upon speculation about what Melendez may have communicated to the prosecution.  Consequently, Claim 2 is without merit.

**Claim 6**

Petitioner alleges that the prosecutor engaged in misconduct during trial in violation

1   of his right to due process under the Fourteenth Amendment. (Dkts. 90 at 23-25, 103 at 27-

2   31.) Specifically, Petitioner complains about two remarks the prosecutor made during his

3   opening statement. Petitioner contends that the prosecutor made an unconstitutional appeal

4   to the passion and prejudice of the jury by using the words "horror" and "evil" to describe

5   Petitioner and the murder scene. (*Id.*) Petitioner also contends that the prosecution

6   improperly vouched for the truthfulness of witness Orva Antone. (*Id.*)

7          Legal Standard

8          The appropriate habeas standard for a claim of prosecutorial misconduct is "the

9   narrow one of due process, and not the broad exercise of supervisory power." *Darden v.*

10  *Wainwright*, 477 U.S. 168, 181 (1986).   In order to succeed on a claim of prosecutorial

11  misconduct, a petitioner must prove not only that the prosecutor's remarks were improper

12  but that they so infected the trial with unfairness as to make the resulting conviction a denial

13  of due process. *Donnelly v. DeChristoforo*, 416 U.S. 637, 645 (1974); *see Smith v. Phillips*,

14  455 U.S. 209, 219 (1982) ("the touchstone of due process analysis in cases of alleged

15  prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor").

16  A petitioner is not entitled to habeas relief in the absence of a due process violation even if

17  the prosecutor's comments were "undesirable or even universally condemned." *Donnelly*,

18  416 U.S. at 642.

19         In evaluating a petitioner's allegations of prosecutorial misconduct, a court "must

20  consider the probable effect of the prosecutor's [comments] on the jury's ability to judge the

21  evidence fairly." *United States v. Young*, 470 U.S. 1, 12 (1985).   To make such an

22  assessment, it is necessary to place the prosecutor's remarks in context. *See Boyde v.*

23  *California*, 494 U.S. 370, 385 (1990); *United States v. Robinson*, 485 U.S. 25, 33-34 (1988);

24  *Williams v. Borg*, 139 F.3d 737, 745 (9th Cir. 1998). In *Darden*, for example, the Supreme

25  Court assessed the fairness of the petitioner's trial by considering, among other

26  circumstances, whether the prosecutor's comments manipulated or misstated the evidence,

27  whether the trial court gave a curative instruction, and "the weight of the evidence against

28  the petitioner." 477 U.S. at 181-82.

1      ***Appeal to Passion and Prejudice:***

2          In his opening statement, the prosecutor described the circumstances surrounding the

3  murders as follows:

4              [The Williams] went out to the kitchen area, started a pot of
               coffee, turned the radio on, sat down at the kitchen table. What
5              happened in the next 10, 15, 20 minutes can only be described
               as unspeakable horror. It was evil. What happened in that next
6              10, 15, 20 minutes ended everything for Jackie and Herbert
               Williams. And the cause and the reason that it ended is right
7              here in the courtroom. The evil is among us.

8  (RT 6/28/88 at 18.) The trial court sustained defense counsel's objection, but denied a

9  mistrial. (*Id.* at 108-09.)

10         Petitioner contends that the prosecutor's inflammatory remarks were aimed at his

11 character since the word "evil" was not used to describe the events that took place, but used

12 in reference to him personally.[3] (Dkt. 103 at 28.) Petitioner alleges that the only purpose of

13 the prosecutorial comment was to inflame the jury and the judge. (*Id.*)

14         On direct appeal, the Arizona Supreme Court denied this claim of prosecutorial

15 misconduct:

16             Runningeagle argues that the statements were an appeal to passion and
               prejudice, entitling him to a new trial. Although the prosecutor's use of the
17             words "horror" and "evil" was argument and, thus, objectionable, there was no
               appeal to passion or prejudice. The words were merely a characterization of
18             the evidence. The evidence would show horror. The evidence would show
               evil behavior. These were reasonable inferences to be drawn from the
19             evidence. That inferences were made at the beginning of the case, rather than
               at the end of the case where they belonged, does not warrant a new trial. The
20             court properly denied the motion for mistrial.

21 *Runningeagle*, 176 Ariz. at 64, 859 P.2d at 174. This decision does not entitle Petitioner to

22 habeas relief.

23         <u>Discussion</u>

24         Prosecutors may not make comments that are calculated to arouse the passions or

25 prejudices of the jury. *See United States v. Leon-Reyes*, 177 F.3d 816, 822 (9th Cir. 1999).

26 _____

27         [3]     In his briefing, Petitioner attempts to include additional prosecutor misconduct
   allegations involving his closing argument. The only exhausted allegations before the Court
28 are the allegations regarding the prosecutor's opening statement. (*See* Dkt. 90 at 23-25.)

1   Therefore, "[a] prosecutor may not urge jurors to convict a criminal defendant in order to

2   protect community values, preserve civil order, or deter future lawbreaking" because such

3   comments create a risk that the defendant will be convicted on grounds unrelated to his guilt

4   or innocence.  *Id.*  "On the other hand, a prosecutor may ask the jury to act as a conscience

5   of the community unless such a request is specifically designed to inflame the jury."  *Id.*

6          Petitioner does not contend that the prosecutor asked the jury to convict him in order

7   to protect community values, preserve civil order, or deter future lawbreaking.  As the

8   Arizona Supreme Court explained, the comments were objectionable because they were

9   based upon inferences from evidence yet to be established at trial.  *Runningeagle*, 176 Ariz.

10  at 64, 859 P.2d at 174.

11         The Court rejects Petitioner's claim that the prosecutor's remarks resulted in a due

12  process violation.  The prosecutor did not manipulate or misstate the evidence.  Rather, it is

13  reasonable to infer that the prosecutor's comments were a reference to the evil act of murder

14  rather than a personal attack upon Petitioner's character.  *See Donnelly*, 416 U.S. at 647

15  ("court should not lightly infer that a prosecutor intends an ambiguous remark to have its

16  most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that

17  meaning from the plethora of less damaging interpretations").  Further, the trial court

18  sustained defense counsel's objection to the comments (RT 6/28/88 at 18-19) and instructed

19  the jury not to consider a lawyer's argument as evidence during its deliberations.  (ROA 50.)

20  Finally, the weight of the evidence against Petitioner was substantial.  His palm print and

21  shoe prints were found at the scene of the crimes.  *Runningeagle*, 176 Ariz. at 61-62, 859

22  P.2d at 171-72. A co-defendant testified that Petitioner was threatening and taunting Mr. and

23  Mrs. Williams with his knife, waving it at them as they were retreating toward their house.

24  *Id.*  The couple was found stabbed to death, lying in their utility room just off the carport area

25  where Petitioner had broken into their home.  *Id.*  Petitioner's girlfriend testified that shortly

26  after the murders he told her about being in a fight with two people and hitting them full

27  force. *Id.*  Subsequently, property belonging to the Williamses and their neighbors was found

28  in Petitioner's possession.  *Id.*

Based on the foregoing analysis, the Court concludes that the state court's denial of this prosecutorial misconduct claim was not an objectively unreasonable application of controlling Supreme Court precedent.

***Vouching for Witness:***

Petitioner contends that the prosecutor vouched for the truthfulness of the testimony of Orva Antone. (Dkt. 18 at 60-61.) Specifically, Petitioner contends that because Antone's plea agreement contained a provision that required him to testify completely and truthfully, such vouching violated Petitioner's constitutional right to due process. (*Id.*)

In his opening statement the prosecutor commented that:

> Mr. Antone was originally charged in this case along with Tilden and RunningEagle. We will tell you right now, he will testify. He will tell you what happened that night as he remembers it. Mr. Antone was given a deal. He has pled to two burglaries in regard to the Davis' residence, in exchange for his complete truthful testimony in this case.

RT 6/28/88 at 34.

The state court did not actually reach the merits of this particular prosecutor misconduct allegation. Therefore, this Court's review is *de novo*. *Pirtle*, 313 F.3d at 1167.

<u>Discussion</u>

One form of prosecutorial misconduct occurs when a prosecutor vouches for the credibility of a witness. *See Young*, 470 U.S. at 18-19; *Lawn v. United States*, 355 U.S. 339, 359-60 n.15 (1958); *United States v. Berger*, 295 U.S. 78, 86-88 (1935). "Vouching consists of placing the prestige of the government behind a witness through personal assurances of the witness's veracity, or suggesting that information not presented to the jury supports the witness's testimony." *United States v. Necochea*, 986 F.2d 1273, 1276 (9th Cir. 1993) (citing *United States v. Roberts*, 618 F.2d 530, 533 (9th Cir. 1980)). Vouching constitutes misconduct because it may lead the jury to convict on the basis of evidence not presented; it also carries the imprimatur of the government, which may induce the jury to adopt the government's judgment rather than its own. *See Young*, 470 U.S. at 18.

The Court assumes, without deciding, that during his opening statement the prosecutor's comments about the truthfulness of Antone's testimony constituted improper

vouching.  However, even if the prosecutor's comments were improper, constitutional error exists only if the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process.  *See Thompson v. Borg*, 74 F.3d 1571, 1576-77 (9th Cir. 1996) (even assuming improper vouching, vouching did not constitute due process violation).

Having evaluated the *Darden* criteria, the Court concludes that a due process violation did not occur.  *See Darden*, 477 U.S. at 181-82.  First, the prosecutor did not manipulate or misstate the evidence by referencing the truthfulness provision of the plea agreement.  Next, the trial court instructed the jury not to consider a lawyer's argument as evidence during their deliberations.  (ROA 50.)  Finally, even discounting the testimony of Antone, the weight of the evidence against Petitioner was substantial.  *See Runningeagle*, 176 Ariz. at 61-62, 859 P.2d at 171-72.  The Court concludes that the prosecutor's comments did not amount to a due process violation.  Petitioner is not entitled to habeas relief for Claim 6.

**Claim 8**

Petitioner contends that his death sentence violates the Eighth Amendment because the state courts did not make a sufficient finding under *Enmund v. Florida*, 458 U.S. 782, 797 (1982).  (Dkt. 115 at 15-22.)

In *Enmund*, the Supreme Court held that a defendant in a felony murder prosecution is eligible for the death penalty only if he actually killed, attempted to kill, or intended to kill the victim.  458 U.S. at 797.  In *Tison v. Arizona*, 481 U.S. 137, 157-58 (1987), the Court expanded *Enmund*'s rule, holding that a felony murder defendant could be sentenced to death if he was a major participant in the underlying felony and acted with reckless indifference to human life.  *See also Greenawalt v. Ricketts*, 943 F.2d 1020, 1029 (9th Cir. 1991) (*Enmund* satisfied when defendant knowingly created a grave risk of death and was an active participant in the felonies).

The jury convicted Petitioner of two counts of first degree murder, as well as other non-capital counts of burglary and theft.  (ROA 51-57.)  On direct appeal, Petitioner contended that the trial court had not made the requisite *Enmund* finding.  *Runningeagle*, 176

Ariz. at 64, 859 P.2d at 174.  The Arizona Supreme Court rejected this argument:

> *Enmund* is satisfied in this case. It is the substance of the finding rather than its label which counts.  *State v. McCall*, 160 Ariz. 119, 126, 770 P.2d 1165, 1172 (1989), *cert. denied*, 497 U.S. 1031, 110 S.Ct. 3289, 111 L.Ed.2d 798 (1990) (finding made in context of rejecting a proffered mitigating factor satisfies *Enmund* requirement). Before imposing Runningeagle's sentence on the non-capital counts, the trial judge listed as an aggravating circumstance "[k]illing helpless individuals." Special Verdict at 10. And, in sentencing Tilden, the court found that Runningeagle, and not Tilden, did the actual stabbing. The trial court therefore found Runningeagle in fact killed the victims, and we agree.

*Runningeagle*, 176 Ariz. at 64, 859 P.2d at 174.  This decision does not entitle Petitioner to habeas relief.

A state court's finding that *Enmund/Tison* is satisfied is sufficient if "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact" could have made the finding beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). On habeas review, the provisions of the AEDPA demand an additional level of deference for state court findings.  *See* 28 U.S.C. § 2254(e)(1) (petitioner bears the burden of overcoming by "clear and convincing evidence" the presumption of correctness applicable to a state court's factual determinations).  "The court must examine the entire course of the state court proceedings against the defendant in order to determine whether, at some point in the process, the requisite factual finding as to the defendant's culpability has been made." *Cabana v. Bullock*, 474 U.S. 376, 387-88 (1986), *overruled in part on other grounds, Pope v. Illinois*, 481 U.S. 497, 503 n.7 (1987).  A state court's findings regarding *Enmund/Tison* are factual determinations which are presumed correct and which Petitioner "bears the heavy burden of overcoming."  *Id.*. at 377-78.

Here, the trial court and the Arizona Supreme Court determined that Petitioner actually committed the Williams murders.  *Runningeagle*, 176 Ariz. at 64, 859 P.2d at 174. In compliance with *Cabana*, the state courts made the requisite factual findings regarding Petitioner's culpability and these findings are presumed correct.  *See Cabana*, 474 U.S. at 387-88.

To overcome the findings, Petitioner makes general arguments that there was a lack

1   of evidence that he murdered the victims and that the evidence only showed that he was

2   involved in the burglary and theft.  (Dkt. 115 at 17-18.)

3        Petitioner's arguments do not satisfy his burden of overcoming the state courts'

4   factual findings.  As Petitioner concedes, his palm print was located on the dryer just over

5   the bodies of Mr. and Mrs. Williams and his shoe print was positively identified at the

6   murder scene. (RT 7/19/88 at 15-18, 62-64, 69.)  Both Mr. and Mrs. Williams died of

7   multiple stab wounds.  (RT 7/11/88 at 63-69, 73-76, 97.)  Petitioner's knife, which he used

8   to threaten the couple, was seized from his vehicle and found to be consistent with the

9   wounds suffered by the victims.  (RT 7/12/88 at 57-58, 65-66; 7/11/88 at 89-90.)  Such

10  evidence supports the state courts' *Enmund/Tison* finding that Petitioner committed the

11  murders.  Petitioner has not presented clear and convincing evidence to overcome the

12  presumption of correctness which attaches to the factual determinations made by the trial

13  court and the Arizona Supreme Court.  Therefore, he is not entitled to relief on Claim 8.

14  **Claim 9**

15       Petitioner alleges that his age at the time of the crimes – eighteen – was a statutory

16  mitigating factor sufficient to call for leniency at sentencing, such that his death sentence

17  violates the Eighth and Fourteenth Amendment. (Dkt. 18 at 68-69.) Petitioner contends that

18  the trial court failed to give this mitigating factor proper weight in sentencing him to death

19  and therefore the trial court's ruling violates both 28 U.S.C. § 2254(d)(1) and (d)(2).  (Dkt.

20  115 at 23.)

21       The clearly established Supreme Court law regarding consideration of mitigation

22  evidence at sentencing is set forth in *Lockett v. Ohio* and *Eddings v. Oklahoma*, which hold

23  that "the Eighth and Fourteenth Amendments require that the sentencer . . . not be precluded

24  from considering, *as a mitigating factor,* any aspect of a defendant's character or record and

25  any of the circumstances of the offense that the defendant proffers as a basis for a sentence

26  less than death." *Eddings*, 455 U.S. 104, 110 (1982) (quoting *Lockett*, 438 U.S. 586, 604

27  (1978)).  While the sentencing court must hear and consider all mitigation evidence, it is free

28  to determine the *weight* to accord such evidence. *See Eddings*, 455 U.S. at 114-15; *see also*

1    *Harris v. Alabama*, 513 U.S. 504, 512 (1995) ("the Constitution does not require a State to

2    ascribe any specific weight to particular factors, either in aggravation or mitigation, to be

3    considered by the sentencer"); *Williams v. Schriro*, 441 F.3d 1030, 1057 (9th Cir. 2006)

4    (same). Thus, this Court assesses whether the Arizona Supreme Court's conclusion – that the

5    trial court considered the proffered mitigation evidence – was contrary to or an unreasonable

6    application of the principles set forth in *Lockett* and *Eddings* and whether Petitioner has met

7    his burden of proving by clear and convincing evidence that the state courts made an

8    objectively unreasonable determination of the facts in light of the evidence presented in the

9    state-court proceeding. *See* 28 U.S.C. § 2254(d)(1),(d)(2), and(e)(1).

10           On direct appeal the Arizona Supreme Court denied this claim:

11                  Runningeagle was a day short of his nineteenth birthday when he
      murdered Mr. and Mrs. Williams. Although age is a mitigating factor, § 13-
12    703(G)(5), "[i]n addition to chronological age ... we also look at such factors
      as a defendant's intelligence and past experience to determine whether age is
13    a mitigating circumstance." *State v. Atwood*, 171 Ariz. 576, 652-54, 832 P.2d
      593, 669-70 (1992), *cert. denied*, 506 U.S. 1084, 113 S.Ct. 1058, 122 L.Ed.2d
14    364 (1993). Runningeagle is of superior intelligence, and is neither immature
      nor younger than his years. He was on felony probation as an adult when he
15    murdered the Williams. In all events, the extent and duration of his
      participation in this cruel and heinous crime minimize age as a mitigating
16    factor. *State v. Gillies*, 142 Ariz. 564, 571, 691 P.2d 655, 662 (1984). We find
      that the trial court did not err in finding that Runningeagle's age was not a
17    mitigating factor sufficient to warrant leniency.

18    *Runningeagle*, 176 Ariz. at 66, 859 P.2d at 176.  This decision does not entitle Petitioner to

19    habeas relief.

20           The state court record demonstrates that both the trial court and the Arizona Supreme

21    Court expressly considered Petitioner's age as a statutory mitigating circumstance.  Thus, the

22    state courts met their constitutional obligation and their decision is not contrary to or an

23    unreasonable application of Supreme Court precedent under § 2254(d)(1).  In addition,

24    Petitioner has not met his burden of proving by clear and convincing evidence that the state

25    courts' factual findings are not supported by the record.  The record supports the courts'

26    findings concerning Petitioner's chronological age and maturity level.  For example, Dr.

27    Francis Enos performed a psychological evaluation and found that  Petitioner had superior

28    intelligence, that he was in control of his behavior at all times, and that he was not acting

1    under any kind of undue influence.  (ROA 83.)  Dr. Enos concluded that Petitioner's actions

2    at the time of the crimes was anti-social, not neurotic or psychotic. (*Id.*)

3           Based on the foregoing, Petitioner is not entitled to relief for Claim 9.

4           **Claim 20**

5           Petitioner challenges the state courts' conclusion that he committed the murders in an

6    especially cruel, heinous or depraved manner under A.R.S. § 13-703(F)(6).  (Dkt. 115 at 40-

7    47.)  Petitioner first argues that Arizona failed to adopt a sufficiently narrow construction of

8    (F)(6) such that the factor's application is appropriately directed and limited.  Next, Petitioner

9    contends that there was a lack of evidence to support the application of the (F)(6) aggravating

10   circumstance to the facts of his case.

11          In support of its finding of especial cruelty, the Arizona Supreme Court relied upon

12   the following evidence:

13          Runningeagle taunted both [elderly] victims with his brutal-looking survival
            knife.  After the Williams retreated into their home, Runningeagle pursued
14          them by breaking through the door with a tire iron.  One of Mr. Williams' stab
            wounds went through his left forearm, indicating that he was trying to fend off
15          the attack.  Mrs. Williams had a superficial knife wound on her neck consistent
            with having a knife pressed to her throat.  A neighbor heard Mrs. Williams
16          crying.  Expert testimony established that the Williams lived for three to four
            minutes after being stabbed.  These facts support the finding that Mr. and Mrs.
17          Williams suffered, and watched each other suffer, horrible physical and mental
            pain before death.  The trial court did not err in finding that these murders
18          were especially cruel.

19   *Runningeagle*, 176 Ariz. at 65, 859 P.2d at 175.

20          The Arizona Supreme Court cited the following evidence in support of its finding of

21   a heinous or depraved state of mind.

22          Runningeagle contends that even if the victims were helpless and their
            killing senseless, as we so find, that is not enough.  He argues that a more
23          substantial factor must be present.  While it is true that helplessness and
            senselessness may be insufficient in some cases, *id.* [citing *State v. Gretzler*,
24          135 Ariz. 42, 52-53, 659 P.2d 1, 11-12 (1983)], here we have more.
            Runningeagle relished the murders.   Orva Antone's testimony that both
25          defendants laughed as they came back to the car after having murdered the
            Williams establishes beyond a reasonable doubt that they enjoyed and relished
26          the horror they had just inflicted.  Runningeagle also bragged to his girlfriend
            that he had been in a "good fight."   The trial court did not err in finding that
27          the murders were committed in an especially heinous or depraved manner.

28   *Runningeagle*, 176 Ariz. at 65, 859 P.2d at 175.

The Arizona Supreme Court's rulings do not entitle Petitioner to habeas relief. In *Walton v. Arizona*, 497 U.S. 639, 654-55 (1990), *overruled on other grounds*, *Ring v. Arizona*, 536 U.S. 584(2002), the Supreme Court held that § 13-703(F)(6) was facially vague. *Walton*, 497 U.S. at 654. Nevertheless, the Court upheld the factor's constitutionality, explaining that the Arizona Supreme Court had construed the terms heinous, cruel and depraved narrowly enough to guide the discretion of the sentencer. *Id.* at 655. Therefore, Petitioner's contention that the (F)(6) factor is unconstitutionally vague is meritless.

With respect to Petitioner's contention that the factor was inappropriately applied in his case, the state courts' finding of the existence of an aggravating factor is a question of state law. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). Therefore, federal habeas review is limited to determining whether the state court's finding was so arbitrary or capricious as to constitute an independent due process or Eighth Amendment violation. *Id.* To assess the sufficiency of the evidence in support of the factor, the Court applies the "rational factfinder" standard and asks "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found" the aggravating factor to exist. *Id.* at 781 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "[A] federal habeas court faced with a record of historical facts which supports conflicting inferences must presume – even if it does not appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326. Further, pursuant to § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El I*, 537 U.S. at 340.

Under Arizona law, the especially cruel, heinous or depraved factor is satisfied by a finding of especial cruelty *or* a finding that the murder is evidenced by especial heinousness or depravity. *See State v. Beaty*, 158 Ariz. 232, 242, 762 P.2d 519, 529 (1988). Cruelty is established when the victim is conscious and suffers physical pain or emotional distress at the time of the offense. *State v. Bible*, 175 Ariz. 549, 604, 858 P.2d 1152, 1207 (1993) (pain

or distress may be mental or physical).  The terms heinous and depraved focus upon a defendant's state of mind at the time of the murder as reflected by his words or his actions. *Beaty*, 158 Ariz at 242, 762 P.2d at 529.  The Arizona Supreme Court evaluates five factors to determine whether a defendant's state of mind was heinous or depraved at the time of the murder: relishing of the murder; infliction of gratuitous violence upon the victim; mutilation of the victim's body; senselessness of the crime; and helplessness of the victim.  *Id.* at 242-43, 762 P.2d at 529-30.

Based upon the trial record and the facts discussed by the Arizona Supreme Court, this Court concludes that there was sufficient evidence to support a finding that the murders were especially cruel and especially heinous or depraved.   In light of such evidence, the state courts' determination that the (F)(6) factor was satisfied was not objectively unreasonable. Accordingly, Petitioner is not entitled to habeas relief on Claim 20.

**Claim 21**

Petitioner challenges the state courts' conclusion that the pecuniary gain aggravating circumstance, A.R.S. § 13-703(F)(5), was satisfied.  Petitioner contends that there was insufficient evidence to show that the murders were committed for pecuniary gain.[4]  (Dkt. 115 at 47.)

A finding that a murder was motivated by pecuniary gain for purposes of § 13-703(F)(5) must be supported by evidence that pecuniary gain was the impetus, not merely the result, of the murder.  *See Moormann v. Schriro*, 426 F.3d 1044, 1054 (9th Cir. 2005); *see also State v. Cañez*, 202 Ariz. 133, 159, 42 P.3d 564, 590 (2002) (killing the victim and sole witness of a robbery is powerful circumstantial evidence of an intent to facilitate escape or hinder detection and providing sufficient evidence that the catalyst for the robbery was pecuniary gain).

On direct review of this claim, the Arizona Supreme Court rejected Petitioner's

---

[4]    Even though Petitioner expands the scope of this claim in his briefing, per this Court's previous Order (Dkt. 108 at 20-21), Claim 21 is limited to an as applied challenge to the sufficiency of the evidence of the pecuniary gain aggravating circumstance.

1  argument that pecuniary gain did not motivate the murders:

2      But Runningeagle was out to steal that night. He burglarized and stole
       from the Davises. The Williams interrupted the Davis burglary in progress. He
3      killed the Williams to complete the burglary of the Davises. He also killed
       them to steal from them. We agree with the trial court that Runningeagle killed
4      the Williams in expectation of pecuniary gain.

5  *Runningeagle*, 176 Ariz. at 65, 859 P.2d at 175.  This decision does not entitle Petitioner to

6  habeas relief.

7      The evidence showed that Petitioner stole property from the Davises and from the

8  Williamses.  In addition to her fatal stab wounds, Mrs. Williams was also found with a

9  superficial laceration around her neck, indicating that she had a knife held to her throat at

10 some point during the altercation.  (RT 7/11/88 at 66-67.)  Further, the drawer in which she

11 stored her jewelry was open when the police searched her home.  (*Id.*)  The police found Mrs.

12 Williams's property in Petitioner's possession.  (*See, e.g.*, RT 12/9/88 at 94-105, 6/29/88 at

13 64-69, 7/7/88 at 37.)   During the attack, Petitioner made no attempt to cover his face or

14 otherwise conceal his identity from the victims. (RT 7/12/88 at 61-63.)  Based upon these

15 circumstances, a rational fact finder could have determined that Petitioner murdered the

16 victim in the expectation of pecuniary gain.  *See, e.g.*, *Williams v. Stewart*, 441 F.3d 1030,

17 1060 (9th Cir. 2006); *Correll v. Stewart*, 137 F.3d 1404, 1420 (9th Cir. 1998); *Woratzeck v.*

18 *Stewart*, 97 F.3d 329, 335-36 (9th Cir. 1996); *Cañez*, 202 Ariz. at 159-60, 42 P.3d at 590-91.

19 Petitioner is not entitled to relief on this claim.

20     **Petitioner's Supplemental Traverse Re: Claim 15**

21     Petitioner requests that the Court to reconsider its conclusion that Claim 15, alleging

22 ineffective assistance of appellate counsel, is procedurally barred.  Petitioner asserts that new

23 law, in the form of the Arizona Supreme Court's decision in *State v. Bennett*, 213 Ariz. 562,

24 146 P.3d 63 (2006), necessitates reconsideration.  The Court disagrees.

25     In *Bennett*, the court ruled that if the same counsel represents a petitioner on direct

26 appeal and during post-conviction proceedings, then the petitioner, without preclusion, may

27 file a second post-conviction relief petition in order to claim ineffective assistance of counsel

28 during direct appeal.  In this case, even though the same counsel represented Petitioner for

- 32 -

1   both his direct appeal and his initial post-conviction relief petition, Petitioner subsequently

2   initiated a second post-conviction relief petition.  (*See* Dkt. 90 at 26-27.)  During those

3   proceedings, Petitioner did not allege ineffective assistance of counsel on direct appeal.  (*Id.*)

4   Thus, *Bennett* does not apply to this case.  The Court therefore denies Petitioner's request for

5   reconsideration of the procedural status of Claim 15.

6                              **EVIDENTIARY DEVELOPMENT**

7          Petitioner seeks various forms of evidentiary development with respect to his claims

8   of ineffective assistance of counsel and a *Brady* violation.  The Court considers Petitioner's

9   requests pursuant to the following standards.

10         Discovery

11         Rule 6(a) of the Rules Governing Section 2254 Cases provides that "[a] judge may,

12  for *good cause*, authorize a party to conduct discovery under the Federal Rules of Civil

13  Procedure, and may limit the extent of discovery."  Rule 6(a), Rules Governing § 2254

14  Cases, 28 U.S.C. foll. § 2254 (emphasis added).  Thus, unlike the usual civil litigant in

15  federal court, a habeas petitioner is not entitled to discovery "as a matter of ordinary course,"

16  *Bracy v. Gramley*, 520 U.S. 899, 904 (1997); *see Campbell v. Blodgett*, 982 F.2d 1356, 1358

17  (1993), nor should courts allow him to "use federal discovery for fishing expeditions to

18  investigate mere speculation," *Calderon v. United States Dist. Ct. for the N. Dist. of Cal.

19  (Nicolaus)*, 98 F.3d 1102, 1106 (9th Cir. 1996); *see also Rich v. Calderon*, 187 F.3d 1064,

20  1067 (9th Cir. 1999) (habeas corpus is not intended to be used as a fishing expedition for

21  petitioners to "explore their case in search of its existence") (quoting *Aubut v. State of Maine*,

22  431 F.2d 688, 689 (1st Cir. 1970)).  To determine whether a petitioner has established "good

23  cause" for discovery under Rule 6(a), a habeas court must identify the essential elements of

24  the petitioner's substantive claim and evaluate whether "specific allegations before the court

25  show reason to believe that the petitioner may, if the facts are fully developed, be able to

26  demonstrate that he is . . . entitled to relief."  *Bracy*, 520 U.S. at 908-09 (quoting *Harris v.

27  Nelson*, 394 U.S. 286, 300 (1969)).

28         Evidentiary Hearing

Historically, the district court had considerable discretion to hold an evidentiary hearing to resolve disputed issues of material fact. *See Townsend v. Sain*, 372 U.S. 293, 312, 318 (1963), *overruled in part by Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992), *and limited by* § 2254(e)(2); *Baja v. Ducharme*, 187 F.3d 1075, 1077-78 (9th Cir. 1999); Rule 8, Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (district court judge shall determine if an evidentiary hearing is required).  That discretion is significantly circumscribed by § 2254(e)(2) of the AEDPA.  *See Baja*, 187 F.3d at 1077-78.

Section 2254 provides that:

> *If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that –*

> (A) the claim relies on –

>> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

>> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2) (emphasis added).  The Supreme Court has interpreted subsection (e)(2) as precluding an evidentiary hearing in federal court if the failure to develop a claim's factual basis is due to a "lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Williams v. Taylor*, 529 U.S. 420, 432 (2000).  A hearing is not barred, however, when a petitioner diligently attempts to develop the factual basis of a claim in state court and is "thwarted, for example, by the conduct of another or by happenstance was denied the opportunity to do so." *Id.*; *see Baja*, 187 F.3d at 1078-79 (allowing hearing when state court denied opportunity to develop factual basis of claim).

When the factual basis for a particular claim has not been fully developed in state court, the district court must first determine whether the petitioner was diligent in attempting to develop the factual record. *See Baja*, 187 F.3d at 1078 (quoting *Cardwell v. Greene*, 152

F.3d 331, 337 (4th Cir. 1998)).  The diligence assessment is an objective one, requiring a determination of whether a petitioner "made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court." *Williams*, 529 U.S. at 435.  For example, when there is information in the record that would alert a reasonable attorney to the existence and importance of certain evidence, the attorney fails to develop the factual record if he does not make reasonable efforts to sufficiently investigate and present the evidence to the state court.  *See id.* at 438-39, 442; *Alley v. Bell*, 307 F.3d 380, 390-91 (6th Cir. 2002) (lack of diligence because petitioner knew of and raised the claims in state court, but failed to investigate all the factual grounds for such claims).

Absent unusual circumstances, diligence requires that a petitioner "at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." *Williams*, 529 U.S. at 437; *see Bragg v. Galaza*, 242 F.3d 1082, 1090 (9th Cir.) (finding no diligence because petitioner neither requested an evidentiary hearing in the trial court nor filed a state habeas petition), *amended on denial of reh'g*, 253 F.3d 1150 (9th Cir. 2001).  The mere request for an evidentiary hearing, however, may not be sufficient to establish diligence if a reasonable person would have taken additional steps.  *See Dowthitt v. Johnson*, 230 F.3d 733, 758 (5th Cir. 2000) (failed to present affidavits of family members that were easily obtained without court order and with minimal expense); *see also McNair v. Campbell*, 416 F.3d 1291, 1299-1300 (11th Cir. 2005) (no development of evidence available through petitioner, family members, and medical literature, and no appeal of denial of funds and hearing); *Cannon v. Mullin*, 383 F.3d 491, 500 (5th Cir. 2004) (lack of diligence if petitioner does not proffer "evidence that would be readily available if the claim were true."); *Koste v. Dormire*, 345 F.3d 974, 985-86 (8th Cir. 2003) (no effort to develop the record or assert any facts to support claim).

In sum, if this Court determines that a petitioner has not been diligent in establishing the factual basis for his claims in state court, then the Court may not conduct a hearing unless the petitioner satisfies one of § 2254(e)(2)'s narrow exceptions.  If, however, the petitioner has not failed to develop the factual basis of a claim in state court, the Court will then

1   proceed to consider whether a hearing is appropriate or required under the criteria set forth

2   by the Supreme Court in *Townsend*.  372 U.S. 293; *see Baja*, 187 F.3d at 1078 (quoting

3   *Cardwell*, 152 F.3d at 337); *Horton v. Mayle*, 408 F.3d 570, 582 n.6 (9th Cir. 2005).

4        Pursuant to *Townsend*, a federal district court *must* hold an evidentiary hearing in a

5   § 2254 case when:  (1) the facts are in dispute; (2) the petitioner "alleges facts which, if

6   proved, would entitle him to relief;" and (3) the state court has not "reliably found the

7   relevant facts" after a "full and fair evidentiary hearing," at trial or in a collateral proceeding.

8   *Townsend*, 372 U.S. at 312-13; *cf. Hill v. Lockhart*, 474 U.S. 52, 60 (1985) (upholding the

9   denial of a hearing when petitioner's allegations were insufficient to satisfy the governing

10  legal standard); *Bashor v. Risley*, 730 F.2d 1228 (9th Cir. 1984) (hearing not required when

11  claim must be resolved on state court record or claim is based on non-specific conclusory

12  allegations).

13       In any other case in which diligence has been established, the district court judge "has

14  the power, constrained only by his sound discretion, to receive evidence bearing upon the

15  applicant's constitutional claim." *Id.* at 318 (noting that if a "habeas applicant was afforded

16  a full and fair hearing by the state court resulting in reliable findings, [the judge] may, and

17  ordinarily should, accept the facts as found in the hearing.").

18       <u>Expansion of the Record</u>

19       Rule 7 of the Rules Governing Section 2254 Cases authorizes a federal habeas court

20  to expand the record to include additional material relevant to the petition.  Rule 7 provides:

21  "The materials that may be required include letters predating the filing of the petition,

22  documents, exhibits, and answers under oath, to written interrogatories propounded by the

23  judge.  Affidavits may also be submitted and considered as part of the record." Rule 7(b),

24  Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254.  The purpose of Rule 7 "is to enable

25  the judge to dispose of some habeas petitions not dismissed on the pleadings, without the

26  time and expense required for an evidentiary hearing." Advisory Committee Notes, Rule 7,

27  28 U.S.C. foll. § 2254; *see also Blackledge v. Allison*, 431 U.S. 63, 81-82 (1977).  Any time

28  expansion of the record is sought, the Court must assess whether the materials submitted are

relevant to resolution of the petition.

Section 2254(e)(2), as amended by the AEDPA, limits a petitioner's ability to present new evidence through a Rule 7 motion to expand the record to the same extent that it limits the availability of an evidentiary hearing. *See Cooper-Smith v. Palmateer*, 397 F.3d 1236, 1241 (9th Cir. 2005) (applying § 2254(e)(2) to expansion of the record when intent is to bolster the merits of a claim with new evidence) (citing *Holland v. Jackson*, 542 U.S. 649, 652-53 (2004) (per curiam)). Thus, when a petitioner seeks to introduce new affidavits and other documents never presented in state court, for the purpose of establishing the factual predicate of a claim, he must either demonstrate diligence in developing the factual basis in state court or satisfy the requirements of § 2254(e)(2)(A) & (B). However, when a petitioner seeks to expand the record for other reasons, such as to cure omissions in the state court record, *see Dobbs v. Zant*, 506 U.S. 357, 359 (1993) (per curiam), establish cause and prejudice, or demonstrate diligence, the strictures of § 2254(e)(2) do not apply. *See Boyko v. Parke*, 259 F.3d 781, 790 (7th Cir. 2001).

**Requests for Evidentiary Development**

**Claims 1(D), 19, and 1(G)**

Petitioner seeks evidentiary development in support of his claims that trial counsel performed ineffectively at trial and sentencing. First, Petitioner seeks a deposition of the trial judge and discovery of the judge's personal files related to her denial of the severance motion. (Dkt. 15 at 81-82.) Next, Petitioner seeks expansion of the record to include certain ABA Guidelines and the declaration of his trial investigator regarding trial counsel's overall performance. (*Id.* at 82-87.) Petitioner also seeks expansion regarding a number of declarations and reports related to potential mitigation information. (*Id.*) Petitioner seeks an evidentiary hearing at which Tilden's trial counsel and co-counsel could offer their opinions regarding whether the trial judge would have granted severance for Petitioner if he had joined Tilden's motion. (*Id.* at 87-88.) Petitioner also wishes to elicit testimony from his trial investigator about the performance of trial counsel during pre-trial and trial proceedings, and from expert witnesses about the standards for effective representation of

1    capital defendants at trial and during the investigation of mitigation information.  (*Id.*)

2         The Court has already determined that the Arizona Supreme Court did not
3    unreasonably apply *Strickland* when it denied Petitioner's ineffective assistance claim based
4    on the failure to join Tilden's severance motion.  *See Williams (Michael) v. Taylor*, 529 U.S.
5    420, 444 (2000).  This Court's evaluation of the state court ruling denying severance was
6    necessarily based on the existing state court record.  Evidence not a part of the state court
7    record regarding the severance denial is irrelevant.  *See Schriro v. Summerlin*, 127 S. Ct.
8    1933, 1940 (2007) (citing *Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998) (evidentiary
9    development is not required if the issues can be resolved by reference to the existing state
10   court record).

11        Furthermore, Petitioner's requests for discovery, expansion of the record, and
12   additional witness testimony at an evidentiary hearing seek information that is not relevant.
13   Regarding evidentiary development, this Court directed Petitioner to describe with specificity
14   the facts he sought to develop in support of specific claims.  (Dkt. 108 at 22.)  In response,
15   Petitioner contended that he needed a deposition of the trial judge and discovery of her
16   personal files.  (Dkt. 115 at 81-82.)  It is a firmly established rule that a judge may not be
17   asked to testify about her mental processes in reaching a judicial decision.  *See Fayerweather*
18   *v. Ritch*, 195 U.S. 276, 306-07 (1904) (testimony regarding the mental processes of a judge
19   involving past decision-making is inadmissible evidence); *see also United States v. Morgan*,
20   313 U.S. 409, 422 (1941) (applying the same rule to the administrative decision-making
21   process).

22        Petitioner's requests to expand his state court record also seek information irrelevant
23   to the disposition of these claims.  (Dkt. 115 at 82-87.)  The applicable ABA guidelines are
24   generalized rules of performance and do not enlighten the Court regarding any specific facts
25   Petitioner seeks to develop.  Similarly, the declaration of Petitioner's trial investigator
26   regarding the performance of trial counsel does not develop any fact that is relevant to the
27   disposition of this claim.

28        The declarations from Petitioner's family and friends are likewise irrelevant.  They

1  are submitted to support an allegation that trial counsel did not investigate and discover

2  available mitigation.  While Petitioner contends that such facts prove that he was prejudiced

3  by counsel's performance at sentencing, he has not shown how the lack of a severed

4  sentencing proceeding prevented him from presenting this evidence.

5       Finally, Petitioner seeks an evidentiary hearing to allow Tilden's counsel and co-

6  counsel to opine whether the trial judge would have granted severance if he had joined

7  Tilden's motion.  Speculation about how a judge may have ruled on a issue is not relevant

8  to this claim.  Trial judges are presumed to know and to follow the law.  *See, e.g.*, *Gretzler*

9  *v. Stewart*, 112 F.3d 992, 1009 (9th Cir. 1997); *Jeffers v. Lewis*, 38 F.3d 411, 415 (9th Cir.

10  1994) (en banc) (same).

11       The state court record is sufficient to evaluate these aspects of counsel's performance.

12  Petitioner's requests for evidentiary development of his ineffective assistance claims are

13  therefore denied.

14  **Claim 2**

15       With respect to his claim of a *Brady* violation, Petitioner requests discovery of records

16  related to Manuel Melendez from the Maricopa County Attorney's Office, the Maricopa

17  County Sheriff's Office, the Maricopa County Public Defender's Office, the Maricopa

18  County Jail, and the Phoenix Police Department.  (Dkt. 115 at 97-104.)  Petitioner also seeks

19  depositions from various individuals affiliated with the County Attorney's Office and the

20  Public Defender's Office who were connected with Melendez and Tilden.  (*Id.*)  Petitioner

21  requests that he be allowed to reserve his request for an evidentiary hearing pending the

22  results of discovery.  (*Id.*)

23       Petitioner also requests expansion of the record to include an affidavit from Kyle

24  Marie Wesendorf, a consultant to former habeas counsel, Benjamin Sanchez.  (Dkt. 115 at

25  104.)  The affidavit would indicate that when Sanchez reviewed the prosecution's file, there

26  was a handwritten note from some member of the prosecution wondering, and then perhaps

27  deciding that Tilden was the killer.  (*Id.*; *see also* No. CV 94-972-PHX-PGR, Dkt. 76.)

28       State Court Proceedings

Prior to his trial, Petitioner received notice that the prosecution had discussions with Manuel Melendez about information he received from Corey Tilden.  (Dkt. 48, Ex. B.)  However, there is no indication in the record that Petitioner attempted to interview Melendez or obtain any information from him before his death in 1995.  (Dkt. 103 at 24.)

In 1995, Petitioner commenced his third PCR, filing his PCR petition in February 1996.  (Dkt. 21, Ex. X.)  Petitioner brought Claim 2 as a claim of newly discovered evidence, alleging that *Brady* evidence regarding Melendez would probably change his verdict or sentence.  (Dkt. 21, Ex. X at 36.)  In support of Claim 2, Petitioner filed the hearing transcript from Melendez's motion to withdraw from his plea agreement.  (*See* Dkt. 48, Ex. A; ROA-PCR 447, Ex. D.)

In the PCR petition, Petitioner indicated that further facts in support of Claim 2 would be presented after discovery, investigation, and use of the court's subpoena power.  (Dkt. 21, Ex. X at 36.)  However, during the proceedings, Petitioner did not present any specific requests for discovery.  Instead, he argued that he was entitled to an evidentiary hearing and that at this hearing he would present additional evidence.[5]  (ROA-PCR 444 at 55.)  The PCR Court summarily dismissed the claim without holding an evidentiary hearing.  (Dkt. 21, Ex. Y, AA.)

In his third PCR, Petitioner alleged that there was a note in the prosecution file about Tilden being the killer and asserted that a supporting affidavit would be filed.  (*See* Dkt. 21,

---

[5]      Although technically not a part of the state court proceedings, in Petitioner's prior habeas proceeding, he was provided with counsel, co-counsel, a law clerk, and investigative resources in order to assist him in preparing an Amended Petition.  (*See* No. CV 94-972-PHX-PGR, Dkts. 10, 14, 30 & 42.)  In April 1995, Petitioner filed an Amended Petition raising thirty-eight claims.  (*Id.*, Dkt. 46.)  Petitioner included Claim 2 in his Amended Petition.  (*Id.*)  Despite law clerk and investigative resources, Petitioner did not support this claim with any factual development.  (*Id.*)  After filing his Amended Petition, Petitioner commenced his third state PCR proceeding, which also raised thirty-eight claims. Subsequently, in 1996, this Court dismissed the habeas action without prejudice, concluding that it was judicially expedient to allow Petitioner's third PCR to conclude in state court before determining whether his habeas claims had been exhausted through those state proceedings.  (*Id.*, Dkt. 90.)

Ex. X at 40-41; ROA-PCR 417, Ex. H.)  No supporting affidavit was ever filed.  Petitioner did acknowledge that former habeas counsel had reviewed the prosecution file before he filed his third PCR petition.  (*Id.*)

Discussion

Petitioner contends that he attempted to develop the factual basis of this claim in state court during his third PCR proceeding but was denied both the opportunity and the resources to develop the claim.  (Dkt. 115 at 104.)  As discussed below, however, it was Petitioner's lack of diligence in developing the facts in state court that bars him from further developing the facts during habeas review.

Diligence required Petitioner to make a reasonable attempt, in light of the information available at the time, to investigate and factually develop Claim 2 in state court.  *See* 28 U.S.C. § 2254(e)(2).  Petitioner had notice before his trial that Tilden had provided information to Melendez about the Williams homicides.  If Petitioner had been diligent and utilized his investigative resources, he could have obtained information from Melendez pre-trial; nothing prevented him from doing so.  *See Raley*, 470 F.3d at 804 (because petitioner knew of the existence of the evidence, he could have obtained the evidence through discovery).  If Petitioner had been diligent, he could have presented any potential Melendez information at his trial, sentencing, or during one of his first two PCR proceedings.  Instead, Petitioner failed to act diligently and did not present this claim until his third PCR.

Furthermore, under state law Petitioner is required to file, along with his PCR petition, affidavits, records, and other evidence supporting his claims.  *See* Ariz. R. Crim. P. 32.5.  Petitioner did attach the Melendez hearing transcript, but the transcript did not factually develop a *Brady* claim.  (*See* ROA-PCR 417, Ex. D.)  In addition, during the PCR proceedings, Petitioner did not make a reasonable attempt to develop the factual evidence in support of his *Brady* claim by making a specific discovery request or other request for resources.  He relied only on a request for an evidentiary hearing, at which he indicated he would present additional evidence.  (ROA-PCR 444 at 55.)

Petitioner's lack of diligence does not satisfy the requirements of § 2254(e)(2).  The

1    Court concludes that Petitioner did not make a reasonable attempt, in light of the information

2    available at the time, to investigate and pursue Claim 2 in state court.  Consequently, §

3    2254(e)(2) bars additional factual development of Claim 2, either through an evidentiary

4    hearing or expansion of the record.

5        Citing *Banks v. Dretke*, 540 U.S. 668 (2004), Petitioner also argues that the prosecutor

6    suppressed the evidence and therefore he was not at fault for failing to develop the evidence

7    in state court.  (Dkt. 124 at 5-6.)  In *Banks*, the Court held the petitioner not at fault for

8    failing to develop the factual basis of a *Brady* claim in state court because the prosecutor had

9    continually suppressed evidence that one of its main trial witnesses had been a police

10   informant.  Because the prosecution had operated under an open file policy and had informed

11   petitioner that it had disclosed all *Brady* evidence, the Court held that petitioner was entitled

12   to rely on the prosecution's statements.  *Banks*, 540 U.S. at 692-93.

13       Although *Banks* stands for the proposition that under certain conditions a petitioner's

14   lack of diligence in state court may be excused due to the actions of the prosecution, the

15   circumstances of this case are distinguishable.  In *Banks*, the petitioner never knew or had

16   reason to know that the prosecution had withheld information.  In contrast, since before his

17   trial, Petitioner had known of Melendez's contact with the prosecution.  Thus, Petitioner

18   cannot be excused from investigating and determining whether *Brady* evidence was available

19   for use at his trial, sentencing, or in state post-conviction proceedings.  *Cf. Jaramillo v.*

20   *Stewart*, 340 F.3d 877, 882 (9th Cir. 2003) (in the context of a *Brady* allegation, finding

21   petitioner diligent in state court even though he did not discover an unknown eye witness to

22   the incident because petitioner did not know and had no reason to know of the new witness

23   until he discovered that witness years later).

24       Petitioner states that he only seeks to discover new evidence supporting the merits of

25   his claim and reserves the right to later request an evidentiary hearing.  A petitioner must

26   establish good cause to be entitled to discovery in a habeas proceeding.  *See* Rule 6, 28

27   U.S.C. foll. § 2254.  When a petitioner seeks to present new evidence not considered by the

28   state courts, he must first satisfy § 2254(e)(2) by showing that he is entitled to an evidentiary

hearing or an expansion of the record.  *See, e.g.*, *Wildman v. Johnson*, 261 F.3d 832, 839-40 (9th Cir. 2001).[6]  If a petitioner only seeks to locate new evidence supporting the merits of his claim, then he has not established good cause for discovery under Rule 6.  *See Isaacs v. Head*, 300 F.3d 1232, 1249-50 (11th Cir. 2002) (under the AEDPA, a petitioner does not establish good cause for discovery if he was not diligent in developing the evidence in state court and the evidence is subject to the § 2254(e)(2) bar); *Boyko*, 259 F.3d at 792 (discovery should not be allowed to augment the merits of a claim unless petitioner was diligent under § 2254(e)(2)); *Charles v. Baldwin*, No. CV 97-380-ST, 1999 WL 694716, *2 (D. Ore. 1999) (same).  A petitioner may not avoid a finding of lack of good cause for discovery by indicating to the Court that he is reserving the right to subsequently request an evidentiary hearing.  *See Charles*, 1999 WL 694716, *2.  It necessarily follows that if the court cannot consider new factual development because of the application of § 2254(e)(2), then discovery is not warranted.  *Boyko*, 259 F.3d at 790.

Finally, regarding the Wesendorf affidavit, Petitioner was not diligent in developing the factual basis of this evidence in his state court proceedings because even though the information was obtained prior to litigation of the third PCR petition, Petitioner did not file the affidavit.  (*See* ROA-PCR 417, Ex. H.)  Because Petitioner did not exercise diligence in state court, § 2254(e)(2) bars the introduction of the affidavit into these habeas proceedings.[7]

---

[6]  Petitioner may overcome a § 2254(e)(2) bar only if he surmounts the considerable hurdles of § 2254(e)(2)(A) and (B).  That is, Petitioner must show either (1) that his claim relies on a new rule of constitutional law that was previously unavailable and made retroactive to cases on collateral review by the Supreme Court; or (2) an instance where the facts could not have been discovered through the exercise of diligence, *see* 28 U.S.C. § 2254(e)(2)(A)(i) & (ii), plus a "convincing claim of innocence."  *Williams*, 529 U.S. at 435 (citing 28 U.S.C. § 2254(e)(2)(B)).

[7]  Even if the record were expanded to include the Wesendorf affidavit and the Court assumed that the alleged prosecutor's note existed, Petitioner would not be entitled to relief.  Certainly, a prosecutor's musings about who may have been the ultimate killer of the Mr. and Mrs. Williams is not substantive evidence; rather, it is irrelevant and inadmissible evidence.  *Cf. Arbelaez v. State*, 775 So.2d 909, 918 (Fla. 2000) (prosecutor's notes and outlines are not public records subject to disclosure).

1   *See Wildman*, 261 F.3d at 839-40.  Based on the foregoing, Petitioner's motion for discovery,

2   expansion of the record, and for an evidentiary hearing on Claim 2 is denied.

3                               **CONCLUSION**

4           The Court finds that Petitioner has failed to establish entitlement to habeas relief on

5   any of his claims.  The Court further finds, as set forth above, that Petitioner's requests for

6   evidentiary development must be denied.

7                     **CERTIFICATE OF APPEALABILITY**

8           Rule 22(b) of the Federal Rules of Appellate Procedure provides that when an appeal

9   is taken by a petitioner, the district judge who rendered the judgment "shall" either issue a

10  certificate of appealability ("COA") or state the reasons why such a certificate should not

11  issue.  Therefore, in the event that Petitioner appeals, this Court on its own initiative has

12  evaluated the claims within the petition for suitability for the issuance of a COA.  *See* 28

13  U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

14          Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has

15  made a substantial showing of the denial of a constitutional right."  With respect to claims

16  rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the

17  district court's assessment of the constitutional claims debatable or wrong."  *Slack v.*

18  *McDaniel*, 529 U.S. 473, 484 (2000).  For procedural rulings, a COA will issue only if

19  reasonable jurists could debate whether the petition states a valid claim of the denial of a

20  constitutional right and whether the court's procedural ruling was correct.  *Id.*

21          The Court finds that reasonable jurists applying the standard of review set forth in this

22  Order, could not debate its resolution of the merits of Petitioner's claims.  Further, for the

23  reasons stated in the Court's Orders regarding the procedural status of Petitioner's claims

24  filed on February 6, 2004 (Dkt. 90) and March 10, 2006 (Dkt. 108), the Court declines to

25  issue a COA with respect to any claims that were found to be procedurally barred.

26          Accordingly,

27          **IT IS HEREBY ORDERED** that Petitioner's Amended Petition for Writ of Habeas

28  Corpus (Dkt. 18) is **DENIED WITH PREJUDICE.**  The Clerk of the Court shall enter

1   judgment accordingly.

2         **IT IS FURTHER ORDERED** denying a certificate of appealability.

3         **IT IS FURTHER ORDERED** that the Clerk of Court send a courtesy copy of this

4   Order to Rachelle M. Resnick, Clerk of the Arizona Supreme Court, 1501 W. Washington,

5   Phoenix, Arizona 85007-3329.

6         DATED this 27th day of November, 2007.

7

8

9

10

11

12

13

14

15

16                    Paul G. Rosenblatt
                      United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28